IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ADMIRAL INSURANCE COMPANY,

           Plaintiff,

v.                                            CIVIL ACTION NO. 3:12-0074

PHILIP F. FISHER, D.O.,
PEGGY WYSONG, as Administratrix
of the Estate of Marian Hyden and
PAMELA BLACKBURN, as
Administratrix of the Estate of
Barry Blackburn, and PAIRODOCS, INC.

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss Amended Complaint filed by Defendant Peggy Wysong, as Administratrix of the Estate of Marian Hyden, and Pamela Blackburn, as Administratrix of the Estate of Barry Blackburn . (ECF No. 11). Plaintiff Admiral Insurance Company opposes the motion, and Defendants Philip F. Fisher, D.O., and Pairodocs, Inc. have not responded to the motion. Upon review, and for the following reasons, the Court **GRANTS** the motion.

**I.
FACTUAL ALLEGATIONS**

This action was filed by Admiral against all the named defendants except Pairodocs, Inc. on January 16, 2012. Instead of filing a response, Defendants Wysong and Blackburn filed a Motion to Dismiss because, inter alia, Admiral failed to name Pairodocs as a defendant in this

action. Soon thereafter, Admiral filed an Amended Complaint naming Pairodocs as a defendant.[1] As a result, this Court denied Defendants Wysong and Blackburn's first Motion to Dismiss without prejudice. Defendants Wysong and Blackburn then filed the current Motion to Dismiss with respect to the Amended Complaint.

In the Amended Complaint, Admiral seeks "declaratory relief pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. § 2201 in the nature of a determination that Admiral need not afford coverage or defense" in two wrongful death suits brought against Dr. Philip F. Fisher, D.O. and Pairodocs arising out of the deaths of Marian Hyden and Barry Blackburn and a judgment that the insurance policy it issued Pairodocs be declared void *ab initio*. *Am. Compl.*, at 1 & 15.[2] Admiral also requests affirmative relief that the policy be rescinded and it be reimbursed fees and costs. *Id*. In support of its requests, Admiral states that it issued a liability policy in which Pairodocs, Inc, a West Virginia Corporation, is the named insured and of which Dr. Fisher was the incorporator and sole principal. The policy became effective on July 12, 2011. Admiral contends Dr. Fisher made material misrepresentations and omissions and concealed certain facts when he applied for the policy on June 30, 2011. Admiral states that, had it known this information, it would not have issued the policy.

In support of its claim that Dr. Fisher misrepresented and concealed facts on his Application, Admiral asserts Dr. Fisher was served with a complaint from the West Virginia Board

---

[1] The Amended Complaint was filed on February 8, 2012.

[2] Admiral basis jurisdiction upon diversity of citizenship.

-2-

of Osteopathy on January 11, 2011, over five months before he completed the Application for insurance. Although the names of patients are not revealed in the Board complaint, Admiral believes "Patient A" in the complaint refers to Ms. Hyden. According to Admiral, Dr. Fisher treated Ms. Hyden from January of 2008 through November of 2009. He also employed her and had a romantic relationship with her. Purportedly, in the fall of 2009, Dr. Fisher gave her access to his personal office and locked cabinets. Admiral states the evidence shows that Ms. Hyden obtained a fentanyl patch and used it with other medication. As a result, Ms. Hyden died of a drug overdose on November 27, 2009. Admiral states that Dr. Fisher told police officers he prescribed the fentanyl patch to Ms. Hyden following an injury in 2006, but the West Virginia Board of Pharmacy has no record of the prescription. On November 4, 2011, Defendant Wysong, as the Administratrix of Ms. Hyden's estate, filed a wrongful death suit in the Circuit Court of Cabell County, West Virginia.[3] Admiral asserts Dr. Fisher knew a civil action may be brought against him with respect to Ms. Hyden's death prior to the time he signed his Application for insurance on June 30, 2011.

In addition, Admiral states that the Board of Osteopathy filed a Statement of Charges against Dr. Fisher with respect to Unidentified Patients 2, 3, 4, 6, and 7. According to Admiral, Dr. Fisher treated each of these patients prior to 2010, and prescribed each patient controlled substances in such amounts, frequency, and duration that it was deleterious to their health and safety. All these patients died. Admiral asserts Dr. Fisher knew prior to June 30, 2011, that it could be alleged his conduct contributed to the deaths.

---

[3]According to Defendants Wysong and Blackburn, the Certificate of Merit was filed on or about September 21, 2011.

Admiral further believes that Barry Blackburn is Unidentified Patient 5 in the Statement of Charges. Admiral claims Dr. Fisher saw Mr. Blackburn as a new patient on April 23, 2008, and prescribed methadone to him for relief from chronic pain. The next day, Mr. Blackburn died from the combined effects of methadone, flouxetine, and dextromethorphan. Admiral asserts Dr. Fisher knew before June 30, 2011, that his conduct may have caused Mr. Blackburn's death and that a malpractice case may ensue. According to the Amended Complaint, Dr. Fisher was given notice of the Blackburn wrongful death suit on November 1, 2011,[4] which ultimately was filed in state court on January 27, 2012.

In this action, Admiral seeks: (1) a determination by this Court that the policy it issued is void *ab initio*; (2) a judgment rescinding the Policy; and (3) reimbursement of costs and expenses. In the Motion to Dismiss, Defendants Wysong and Blackburn respond by arguing, *inter alia*, that this Court should abstain from hearing this action because the coverage issue was raised as a declaratory judgment action in state court in conjunction with the wrongful death actions. For the following reasons, the Court agrees with Defendants Wysong and Blackburn.

## II.
## DISCUSSION

Defendants Wysong and Blackburn assert that this Court should abstain from hearing Admiral's action in favor of allowing the state court resolve the issues in the declaratory actions filed as part of their wrongful death actions. Defendants Wysong and Blackburn argue that, to the extent Admiral has made valid claims, all those claims arise under the Declaratory Judgment Act

---

[4]Defendants Wysong and Blackburn state the Certificate of Merit was served on Dr. Fisher on or about December 19, 2011.

and, therefore, abstention is governed by the standards set forth in *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994), and *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321 (4th Cir. 1937). However, Admiral contends it has made both declaratory and affirmative claims for relief, and its requests for affirmative relief are governed by the stricter abstention standard announced in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Upon review of the claims, the Court agrees with Admiral.

Without doubt, Admiral's request that this Court determine it does not have to provide insurance coverage or a defense in the underlying wrongful death cases are claims under the Declaratory Judgment Act. *See Am. Compl.*, at 1 (requesting "declaratory relief pursuant to the Federal Declaratory Judgments Act . . . in the nature of a determination that Admiral need not afford coverage or defense to Dr. Fisher with respect to [the] two wrongful death claims"). However, Admiral also requests that the Court rescind the policy and be awarded costs and expenses. *See id.* at 1 & 15 (stating "Admiral further seeks affirmative relief in the nature of an order of rescission of a liability insurance policy issued to Dr. Fisher" and seeks "[j]udgment for all costs and expenses incurred in pursuit of this action").[5] The Fourth Circuit has held that requests for rescission and recovery of defense costs are requests for nondeclaratory relief. *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 205 (4th Cir. 2006). Therefore, this Court must analyze Admiral's requests for affirmative relief under the *Colorado River* standard. *See Great Am. Ins. Co. v. Wilmeth Law Firm*, Civ. Act. No. 4:06-cv-3210-RBH, 2007 WL 2815592, at *3 (D. S.C. Sept. 25, 2007) (citing *Gross* and stating

---

[5]As pointed out by Defendants Wysong and Blackburn, the policy actually was issued to Pairodocs, Inc., not Dr. Fisher.

"[t]he district court's decision whether to abstain from exercising jurisdiction over nondeclaratory claims is governed by the *Colorado River* doctrine").

*Colorado River* provides that federal courts have "virtually [an] unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817 (citations omitted). This Court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821). However, this duty is not absolute, and exceptional circumstances may exist which warrant abstention. *Colorado River*, 424 U.S. at 818. "*Colorado River*, solely as a matter of judicial administration, permits dismissal of a *duplicative* federal action when '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favors abstention." *Chase Brexton Health Serv., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005) (quoting *Colorado River*, 424 U.S. at 817 (emphasis original; other citations omitted)). This Court's task "is not to find some substantial reason for the *exercise* of jurisdiction . . . ; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis original).

In determining whether abstention is appropriate, the first thing that the Court must do is look to see whether there is parallel state litigation. *Chase Brexton*, 411 F.3d at 463. The Fourth Circuit has strictly construed this factor as requiring that "the parties involved be almost identical." *Id.* at 464. In addition, the Fourth Circuit instructs that "'[s]uits are parallel if

-6-

substantially the same parties litigate substantially the same issues in different forums.'" *Id.* (quoting *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991)).

In this case, Admiral, Pairodocs, Dr. Fisher, Peggy Wysong, and Pamela Blackburn are all named parties in both the federal and state actions. Although Ms. Wysong and Ms. Blackburn filed separate state court actions, the state court has consolidated their actions with respect to the declaratory judgment claims, and both Ms. Wysong and Ms. Blackburn are represented by the same counsel in the federal and state cases. Therefore, the Court finds that, under these circumstances, the parties are substantially identical for purposes of *Colorado River* abstention analysis.

Turning next to whether the parties are attempting to litigate the same issues in both federal and state court, the Court finds both the federal and state actions seek declaratory relief with respect to whether Admiral has a contractual duty to pay claims under the professional liability policy it issued to Pairodocs. The parties also agree in their supplemental briefing filed with this Court (ECF Nos. 25 & 26) that, although Admiral has not filed a cross-claim against Pairodocs and Dr. Fisher in the state court action, Ms. Wysong and Ms. Blackburn have raised the issue of Admiral's duty to defend and indemnify Pairodocs and Dr. Fisher in the state cases.[6] In addition, Ms. Wysong and Ms. Blackburn specifically assert in their state court actions that there is no legal basis to void the policy and they generally ask for a declaration as to the "rights, obligations and legal relationships of the parties under the professional liability policy issued by defendant, Admiral,

---

[6]Admiral asserts it has filed motions to dismiss these claims in state court.

-7-

to defendant, Pairodocs." *Wysong's Amend. Compl.*, at ¶¶19 & 32 and *Blackburn's Compl.*. at ¶¶ 13 & 26. Thus, comparing the federal and state actions, this Court finds the parties are litigating substantially the same issues in both courts. Accordingly, given the cases involve the same parties and same issues, the Court finds there is parallel state litigation.

Having found parallel state litigation exists, the Court next turns to the other factors courts should consider when abstention is raised. As explained by the Fourth Circuit in *Chase Brexton*, if a parallel suit exists, there are six general factors a court should consider:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

411 F.3d at 463-64 (citing *Moses H. Cone*, 460 U.S. at 15-16 & 19-27; *Colorado River*, 424 U.S. at 818-19; *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934-35 (4th Cir. 1992)). The Fourth Circuit emphasized this "is not a 'hard and fast' . . . 'checklist,'" and the Court always must keep in mind that abstention is an exception and the parallel state case must "'be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Id*. (quoting *Moses H. Cone*, 460 U.S. at 28).

Applying these factors, the Court finds the first factor, regarding whether one court may assume *in rem* jurisdiction over property to the exclusion of others, is irrelevant to the present

case and does not support abstention. As to the second factor, the Court finds that, although the state and federal court's are in close proximity to one another, the convenience of the parties nevertheless is compromised by the fact they will be litigating overlapping issues in both courts, as explained below with respect to the next factor. It certainly would be more convenient and promote efficiency and comity for the parties to litigate all the issues in one forum versus two forums.

Upon consideration of whether abstention will avoid piecemeal litigation, the Court finds this factor weighs heavily in favor of allowing the state court to resolve the issues raised here. Initially, the Court recognizes that, in this action, Admiral not only seeks to have a declaration that there is no insurance coverage, but it also seeks to rescind and void the policy *ab initio* because Admiral claims that Dr. Fisher made material misrepresentations on the Application for insurance. Specifically, Admiral makes numerous allegations in the federal action which, if true, would constitute a deviance from the standard of care and malpractice on the part of Dr. Fisher, which are the issues being litigated in the state wrongful death cases. For instance, Admiral asserts Dr. Fisher "inappropriately prescribed narcotic medication and/or furnished narcotic medication to Ms. Hyden, and he knew that his conduct may be alleged to have caused Ms. Hyden's death." *Am. Compl.* at ¶ 22(l). In addition, Admiral claims Dr. Fisher "failed to consider all factors in Mr. Blackburn's history and failed to take reasonable and prudent precautions for the safety of Mr. Blackburn and that this conduct may have been the cause of Mr. Blackburn's death." *Id*. at ¶42(f). Admiral makes similar allegations of malpractice as to Unidentified Patients 2, 3,4, 6, and 7.

Whether or not Dr. Fisher committed malpractice is the exact issue pending before the state court with respect to the wrongful death actions. Given the very specific malpractice claims Admiral makes in its Amended Complaint, which serve as part of the basis for its contention that Dr. Fisher misrepresented facts and made omissions on his Application for insurance, discovery on the declaratory judgment and wrongful death actions will significantly overlap and present a real possibility of conflicting rulings between the two courts. In addition, decisions this Court may make on what Dr. Fisher knew and when he knew it could significantly impact the course of proceedings in the state court actions and the potential amount of damages available to the underlying state court plaintiffs.[7] Clearly, this entanglement between the declaratory judgment and wrongful death actions does not promote comity and efficiency and would result in piecemeal litigation on the medical malpractice allegations pled in both actions[8]

With respect to the fourth factor's consideration of the order in which jurisdiction was obtained by the federal versus state court, the Court finds this consideration deserves little weight under the facts of this case. This action was filed on January 16, 2012, but it named Dr. Fisher, not Pairodocs, as the defendant. On January 27, 2012, Ms. Wysong filed an Amended Complaint in

---

[7] For instance, West Virginia Code § 55-7B-8 sets forth limits on liability for noneconomic losses in medical malpractice acts. However, subparagraph (d) of that section provides those limits "are not available to any defendant in an action pursuant to this article which does not have medical professional liability insurance in the amount of at least one million dollars per occurrence covering the medical injury which is the subject of the action." W. Va. Code § 55-7B-8(d), in part.

[8] Although arguably this Court may not have to decide whether or not Dr. Fisher actually committed malpractice to resolve the declaratory judgment action, at the very least, discovery will encompass Dr. Fisher's conduct as a physician and whether he should have responded differently to certain questions on his Application for insurance based upon the potential for medical malpractice actions being brought against him for allegedly deviating from the standard of care.

state court, which added her request for a declaratory judgment and named Dr. Fisher, Pairodocs, and Admiral as defendants.[9] Ms. Blackburn also filed her original Complaint on January 27, 2012, seeking a declaratory judgment and naming Dr. Fisher, Pairodocs, and Admiral as defendants. Following Defendants Wysong and Blackburn's first motion to dismiss filed on January 31, 2012, for failing to name Pairodocs, as the named insured, in the federal action, Admiral quickly filed an Amended Complaint on February 8, 2012, adding Pairdocs as a defendant. Given that all these actions were filed or amended within a very short amount of time and, although Admiral filed its action first, it did not name Pairodocs as a defendant until after the state court actions were filed which named all the defendants, the Court finds the order in which the courts obtained jurisdiction simply is not significant enough to tip the scales in favor of abstention.

Upon considering the progress achieved in each action, the parties recently filed supplemental briefing in which they advise that the state court bifurcated the wrongful death actions from the declaratory judgment actions. Discovery on the medical malpractice cases is proceeding with trials set for September 9, 2013 in the Blackburn case and November 4, 2013 in the Wysong case. Virtually no discovery has occurred in the consolidated declaratory judgment action. As explained earlier, however, as the two issues in the bifurcated actions are so intertwined with one another, overlap of discovery is inevitable. Nevertheless, at this point, the Court cannot say based upon the information it has that significant progress toward resolving the state cases has been achieved.

---

[9]Ms. Wysong filed her original Complaint in state court on November 4, 2011.

Finally, the Court must look to whether federal or state law governs the merits of the cases and whether the state court can adequately protect the parties' rights. In this case, the Court finds a decision on the merits is governed by state law and the state court is certainly adequate to protect the parties' rights. Therefore, both of these factors favor abstention.

Thus, in sum, factors two, three, five and six all favor abstention. Factor one is irrelevant, and factor four's consideration of what order jurisdiction was obtained, does not weigh significantly either for or against abstention. The only factor arguably that weighs against abstention relates to the lack of progress achieved in the state court on the declaratory judgment action. However, the Court is mindful of the fact there will be inevitable overlap with the discovery in the wrongful death actions.

Considering and weighing all these factors in light of the Court's obligation to exercise the jurisdiction bestowed upon it, the Court finds that this case represents one of those rare instances in which exceptional circumstances exist in which abstention is appropriate. This case is unlike many insurance declaratory judgment action in which the facts to be resolved with respect to the insurance issue do not encompass the underlying action, such as cases in which the insurer denies coverage because the underlying claim is not covered under the terms of the policy or the policy was cancelled prior to the occurrence of the alleged covered event. Those types of cases usually can be resolved without any consideration of the underlying claims. Here, however, the very premise of Admiral's federal action is that Dr. Fisher knew he committed acts which constitute malpractice and he failed to disclose that information to the insurer. These allegations, which

include, but are not limited to, Dr. Fisher causing his patients' deaths by improperly dispensing narcotic medications and failing to take reasonable and prudent precautions, are all matters which will be litigated in the wrongful death cases. As Admiral has made very specific allegations in its action which, if true, constitute malpractice, the Court finds that surrendering jurisdiction under the limited circumstances of this case constitutes "'[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation[.]'" *Chase Brexton*, 411 F.3d at 463 (quoting *Colorado River*, 424 U.S. at 817 (other citations omitted)).

## III.
## CONCLUSION

Accordingly, given that the above factors weigh in favor of abstention, the Court **GRANTS** Defendants Wysong and Blackburn's Motion to Dismiss Amended Complaint on the grounds of abstention. (ECF No. 11).[10]

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: September 25, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[10]As the Court finds abstention proper in this case, the Court declines to address Defendants Wysong and Blackburn's failure to state a claim argument.